******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE N. A.*
## (AC 48224)

Cradle, C. J., and Alvord and Wilson, Js.

*Syllabus*

The respondent mother appealed from the trial court's judgment terminating her parental rights with respect to her minor child. The mother claimed that the court improperly determined that she had failed to achieve a sufficient degree of personal rehabilitation, pursuant to statute (§ 17a-112 (j) (3) (B) (i)), as would encourage the belief that she could assume a responsible position in the child's life within a reasonable period of time. *Held*:

The trial court properly found, by clear and convincing evidence, that the Department of Children and Families had made reasonable efforts to reunify the respondent mother with the child, the department having referred the mother for numerous services over the course of two years to address her alcohol use and history of intimate partner violence.

The evidence was sufficient to support the trial court's determination that the respondent mother had failed to achieve the requisite degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i), as the court, in reaching its conclusion, did not improperly rely, as the mother contended, on messages she had sent to her incarcerated husband, who had assaulted her with a motor vehicle, that expressed her continued romantic commitment to him and referenced her continued alcohol use, and her claim that those messages undermined the testimony of the department's workers at trial constituted an improper request for this court to reweigh the evidence.

The trial court's conclusion that termination of the respondent mother's parental rights was in the child's best interest was not clearly erroneous, as the court made written findings regarding each of the factors enumerated in § 17a-112 (k), and, contrary to the respondent's claim, it did not misstate the law regarding the role of the minor child's attorney, as no party argued

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

that the child's rights and best interest did not coincide or moved for the appointment of a guardian ad litem for the child.

Argued May 19—officially released June 24, 2025**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Hartford, Juvenile Matters, and tried to the court, *Anker, J.*; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent mother).

*Nisa J. Khan*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Rafeena Bacchus Lee*, assistant attorney general, for the appellee (petitioner).

*Stein M. Helmrich*, assigned counsel, for the minor child.

*Opinion*

ALVORD, J. The respondent mother, L. A., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor child, N. A.,[1] on the ground that the respondent had failed to achieve a sufficient degree of personal rehabilitation, pursuant to General Statutes § 17a-112 (j) (3) (B) (i). On appeal, the respondent claims that the court improperly determined that (1) the Department of Children and Families (department) made reasonable

---

** June 24, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent father, K. M., consented to the termination of his parental rights, and he is not participating in this appeal. Accordingly, all references to the respondent are to L. A. only.

efforts to reunify her with the child, (2) she failed to rehabilitate sufficiently, and (3) termination of her parental rights was in the child's best interest.[2] We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. The child was born in October, 2016. The department's most recent involvement with the respondent began in April, 2022,[3] when the respondent was arrested for driving under the influence while the child was in the vehicle. "When [department] investigator Erin Wasicki spoke to [the respondent] the following day in court, [she] denied that she was under the influence at the time. She minimized the incident by characterizing it as 'hilarious,' and saying the judge was laughing and told her it was all a misunderstanding. However, the charges were not dropped. Indeed, the respondent . . . was eventually sentenced in January, 2024, to one year in jail, execution suspended after thirty days, with two years of probation. . . . Wasicki also spoke to family and friends who expressed concerns regarding the respondent's . . . alcohol use."

The department also learned of possible intimate partner violence against the respondent by her husband, J. G. When Wasicki went to the respondent's home in April, 2022, J. G. was upstairs. The respondent "claimed he was her boyfriend, he did not live with her, and he had nothing to do with [the department's] involvement. She refused to allow access to J. G. and provided two

---

[2] The attorney for the minor child filed a statement adopting the position of the petitioner.

[3] The department's previous involvement with the respondent dates back to 2016, due to concerns of substance use by the respondent and intimate partner violence against the respondent by the child's father, K. M. In 2018, the child was adjudicated neglected and was committed to the custody of the petitioner. In 2019, the child was reunified with the respondent under a period of protective supervision, which expired later in 2019.

different birth dates for him in an apparent attempt to hide his true identity. A search of [department] records revealed that J. G. had been found by [the department] to be the perpetrator of interpersonal violence against three other partners, with the most recent incident occurring in 2020, and he had pending charges for narcotics, strangulation, and risk of injury to a minor."

On April 18, 2022, the department filed an ex parte request for an order of temporary custody and a neglect petition. The order of temporary custody was sustained on April 22, 2022.

"On June 5, 2022, two months into the most recent [department] involvement, there was an incident of interpersonal violence between the respondent . . . and J. G. They were both drinking, they had an argument, and J. G. attempted to leave in the [respondent's] car. When the respondent . . . tried to stop him from leaving, she was dragged by the car. This resulted in severe injuries to the respondent . . . including a degloved hand,[4] broken fingers, and a left leg injury. When J. G. was arrested, he was found to be in possession of fentanyl. J. G. was incarcerated on June 25, 2022, after the incident with the car. The respondent . . . maintains to this day that this was an accident and it was all her fault." (Footnote in original.)

The child was adjudicated neglected and committed to the custody of the petitioner on July 21, 2022. The court provided the respondent with specific steps to facilitate her reunification with the child. "[The respondent] has made efforts over the past two years to comply with and complete them, although she has not been fully successful, as she has failed to gain sufficient

---

[4] "This is an injury where the top layer of skin is torn away from the underlying muscle."

insight into her alcoholism or exposure to intimate partner violence. She has also consistently refused to partner with [the department] for an assessment of her husband.''

On August 3, 2023, the petitioner filed a petition to terminate the respondent's parental rights with respect to the child on the grounds that the child previously had been adjudicated neglected and that the respondent had failed to achieve a sufficient degree of rehabilitation pursuant to § 17a-112 (j) (3) (B). The court, *Anker, J.*, held a trial on the petition on July 25, 2024. The petitioner presented the testimony of Joshua Burns, an officer with the Department of Correction, who testified regarding messages between the respondent and J. G., transmitted while J. G. was incarcerated. Copies of the messages were admitted into evidence without objection, among other documentary evidence. The petitioner also presented the testimony of Wasicki; Tashawna Mitchell, an investigative social worker with the department; and Vanessa Lopez, a department social worker. The respondent testified and presented the testimony of Christina Ferrante, a licensed professional counselor.

On September 27, 2024, the court issued a memorandum of decision in which it terminated the respondent's parental rights. The court found by clear and convincing evidence that the department had made reasonable efforts to reunify the respondent with the child and that the respondent was unable to benefit from reunification efforts.[5]

---

[5] On appeal, the respondent argues that the court did not make a finding that she was unable to benefit from services that the department offered. The respondent argues that "[t]he closest the trial court comes to such a conclusion is in the dispositional section [of its memorandum of decision] concerning [her] efforts to adjust her circumstances to make it in the best interest of the minor to be returned to the respondent . . . ." The petitioner responds that the court found by "clear and convincing evidence that, although [the department] made efforts to reunify with her, the respondent . . . has been unable to benefit from reunification efforts." The petitioner further maintains that it is inconsequential that the finding "appears outside

The court also found that the respondent had failed to achieve an appropriate degree of personal rehabilitation as would encourage the belief that, within a reasonable time, she could assume a responsible position in the child's life. Finally, the court found by clear and convincing evidence that termination of the respondent's parental rights was in the child's best interest. This appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

The respondent first argues that the court erred in concluding that the department made reasonable efforts to reunify her with the child.[6] We are not persuaded.

of the trial court's section on reasonable efforts" in the memorandum of decision and cites the well established principle that "an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *In re Jason R.*, 306 Conn. 438, 453, 51 A.3d 334 (2012).

Because we conclude that the court properly found, on the basis of clear and convincing evidence, that the department made reasonable efforts to reunify the respondent and the child, we need not reach the merits of the respondent's claim that the court did not make a finding that she was unable to benefit from services. "Pursuant to § 17a-112 (j) (1), the petitioner must prove *either* that the department has made reasonable efforts to reunify *or*, *alternatively*, that the parent is unwilling or unable to benefit from reunification efforts. . . . Section 17a-112 (j) clearly provides that the petitioner is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Citation omitted; emphasis in original; internal quotation marks omitted.) *In re Ryder M.*, 211 Conn. App. 793, 808 n.7, 274 A.3d 218, cert. denied, 343 Conn. 931, 276 A.3d 433 (2022); see id. (declining to address claim that court improperly determined that respondent was unable or unwilling to benefit from reunification efforts in light of determination that court properly found that department had made reasonable efforts to reunify respondent and child).

[6] The respondent also challenges the constitutionality of General Statutes §§ 17a-111b and 17a-112 (j). Specifically, she contends that the statutory interplay between these sections "allows for an impermissible end run around the clear and convincing evidentiary standard required, as a matter of due process, in all termination hearings." According to the respondent, "the statutory scheme requires the department to prove it made reasonable efforts to reunify the respondent with [her] child by clear and convincing

"[Section] 17a-112 (j) (1) requires that before terminating parental rights, the court must find by clear and convincing evidence that the department has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate . . . . Thus, the department may meet its burden concerning reunification in one of three ways: (1) by showing that it made such efforts, (2) by showing that the parent was unable or unwilling to benefit from reunification efforts or (3) by a previous judicial determination that such efforts were not appropriate. . . . [I]n determining whether the department has made reasonable efforts to reunify a parent and a child . . . the court is required in the adjudicatory phase to make its assessment on the basis of events preceding the date on which the termination

evidence unless the court has approved a permanency plan other than reunification. But at the permanency plan hearing, the department is merely required to satisfy its burden, including that it has made reasonable efforts to reunify the parent with the child . . . by a mere preponderance of the evidence."

In the present case, the court did not relieve the petitioner of her burden of proving that the department made reasonable efforts at reunification. Instead, the court found, by clear and convincing evidence, that, "although [the department] made efforts to reunify [the child] with her, the respondent . . . has been unable to benefit from reunification efforts." Because the court expressly found, on the basis of clear and convincing evidence, that the department made reasonable efforts to reunify the respondent and the child and we affirm that finding, we need not address the respondent's constitutional claim. See *In re Kyreese L.*, 220 Conn. App. 705, 714–15 n.6, 299 A.3d 296 (declining to address constitutional challenge to statutory scheme because court properly found, on basis of clear and convincing evidence, that department made reasonable efforts to reunify respondent and child), cert. denied, 348 Conn. 901, 300 A.3d 1166 (2023); *In re Timothy B.*, 219 Conn. App. 823, 828 n.5, 296 A.3d 342 (noting that Connecticut courts "follow the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions" (internal quotation marks omitted)), cert. denied, 349 Conn. 919, 318 A.3d 439 (2023).

petition was filed. . . . [T]he court, [w]hen making its reasonable efforts determination . . . is limited to considering only those facts preceding the filing of the termination petition or the most recent amendment to the petition . . . ." (Internal quotation marks omitted.) *In re Kyreese L.*, 220 Conn. App. 705, 715, 299 A.3d 296, cert. denied, 348 Conn. 901, 300 A.3d 1166 (2023).

"Our review of the court's reasonable efforts determination is subject to the evidentiary sufficiency standard of review. . . . Under this standard, the inquiry is whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . The court's subordinate findings made in support of its reasonable efforts determination are reviewed for clear error." (Citations omitted; internal quotation marks omitted.) *In re Ryder M.*, 211 Conn. App. 793, 809, 274 A.3d 218, cert. denied, 343 Conn. 931, 276 A.3d 433 (2022).

In the present case, the department determined that its main concerns regarding the respondent were her alcohol use and intimate partner violence history. The record in the present case demonstrates that the department made reasonable efforts to address these issues and to facilitate the respondent's reunification with the child. The court found that the department "referred [the respondent] to numerous services over the course of two years to address her substance use, mental health, and interpersonal violence in her relationships. . . . [I]t offered her parenting education services, supervised visitation with the child, substance use services, and services to educate her about interpersonal violence." The court also made the following detailed

findings of facts regarding the services offered to the respondent. The respondent participated in individual therapy with Ferrante to address intimate partner violence concerns. However, "[t]he respondent . . . also consistently denied any interpersonal violence between herself and J. G. in her therapy sessions, so any therapy would have been unable to address this issue with any specificity." The department referred the respondent to the Village for Families and Children Quality Parenting Center for parenting coaching and supervised visitation, Circle of Security for further parenting services, Intensive Outpatient Treatment at Intercommunity for mental health and substance use, and the Parents Recovering from Opioid Use Disorder (PROUD) program for substance use.[7] Additionally, the respondent participated in Alcoholics Anonymous (AA). The court's findings as to these services amply support its reasonable efforts determination. See *In re Ryder M.*, supra, 211 Conn. App. 811–12 (reasonable efforts included referrals to mental health and substance use service providers and parenting program).

In challenging the court's reasonable efforts determination, the respondent focuses on the fact that the department did not "require or request a hair test" or "seek to verify her attendance at AA meetings."[8] The respondent contends that testing would have allowed her "to demonstrate, unequivocally, that she was not using alcohol . . . ." We disagree with the respondent's argument that the department did not make reasonable efforts at reunification because it did not require or request hair testing or verify her attendance at AA meetings. First, it is axiomatic that "[r]easonable efforts

---

[7] The court noted in its memorandum of decision that the PROUD program can address alcohol use and that there was no evidence that the respondent had used opioids.

[8] The respondent, in her appellate brief, "concedes there is nothing the department could do with regard to the trial court's concerns with the relationship between the respondent and J. G."

means doing everything reasonable, not everything possible," and that "[o]ur courts are instructed to look to the totality of the facts and circumstances presented in each individual case in deciding whether reasonable efforts have been made." (Internal quotation marks omitted.) *In re Caiden B.*, 220 Conn. App. 326, 349–50, 297 A.3d 1025, cert. denied, 348 Conn. 904, 301 A.3d 527 (2023); see also *In re Charli M.*, 229 Conn. App. 72, 83, 326 A.3d 1123 ("[t]he question for this court is not whether some evidence would support a determination that the department should have referred the respondent to an [intimate partner violence] program but, rather, whether the totality of the evidence supports the trial court's finding that the department's reunification efforts, considered cumulatively, were reasonable"), cert. denied, 350 Conn. 935, 327 A.3d 384 (2024). Moreover, as the petitioner notes in her appellate brief, there was no evidence before the court that the respondent asked the department for a hair test, which she contends for the first time on appeal should have been provided to her.[9] See *In re Corey C.*, 198 Conn. App. 41, 64, 232 A.3d 1237 (respondent's failure to request services undermined argument that those services were part of what department should have provided as part of reasonable efforts to reunify him with his child), cert. denied, 335 Conn. 930, 236 A.3d 217 (2020). Finally, the department reasonably could have determined that intimate partner violence was the foremost impediment and tailored its reunification efforts toward this specific concern. See id., 65 (respondent's claim that department failed to provide him with specialized smoking cessation services ignored totality of services offered).

On the basis of our review of the record, we conclude that there is sufficient evidence to support the court's

[9] Aside from asking Lopez a single question as to whether the department requested a hair test, the respondent did not otherwise raise this issue before the trial court.

finding that the department made reasonable efforts to reunify the respondent with the child.

## II

The respondent next claims that the court improperly determined that she had failed to rehabilitate sufficiently. The respondent primarily contends that the court improperly relied on messages she sent to J. G., in which she expressed continued romantic commitment to J. G. and referenced her continued use of alcohol. The respondent argues that the "messages do not meet the clear and convincing evidentiary standard because they are so completely undermined by the testimonial evidence, including the testimony of the department's own workers . . . ." We are not persuaded.

"Failure of a parent to achieve sufficient personal rehabilitation is one of [the] statutory grounds on which a court may terminate parental rights pursuant to § 17a-112. . . . Concerning the failure to achieve personal rehabilitation, § 17a-112 (j) (3) (B) (i) provides for the termination of parental rights when the minor child has been found to have been neglected, abused or uncared for in a prior proceeding and the parent of such child has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child.

"Personal rehabilitation as used in [§ 17a-112 (j) (3) (B) (i)] refers to the restoration of a parent to [his] former constructive and useful role as a parent. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [his] ability to manage [his] own life, but rather whether [he] has gained the ability to care for the particular needs of the child at issue. . . . An inquiry regarding personal rehabilitation requires us to obtain a historical perspective of the

respondent's child-caring and parenting abilities. . . . Although the standard is not full rehabilitation, the parent must show more than any rehabilitation. . . . Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. . . . [E]ven if a parent has made successful strides in [his] ability to manage [his] life and may have achieved a level of stability within [his] limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, [he] could assume a responsible position in the life of [his child]. . . .

"[T]he appropriate standard of review is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court." (Citation omitted; internal quotation marks omitted.) *In re Mikhail M.*, 230 Conn. App. 86, 88–89, 328 A.3d 758, cert. denied, 351 Conn. 907, 330 A.3d 132 (2025).

Concerning the respondent, the court found: "Unfortunately, all the programs the respondent . . . has attended have not enabled her to understand, appreciate, or address the interpersonal violence in her relationship with J. G. Several programs in which she participated, e.g., Circle of Security and the Village for Families and Children, noted her limited insight into her relationship with J. G. In addition, as she has never admitted to her therapist that there is interpersonal violence between her and J. G., her individual therapy did not address this. She has also consistently denied having a problem with alcohol. Although she testified

that she has severed her ties with J. G., the court does not view her testimony as credible. The respondent . . . continued to speak to J. G. on the phone when he was incarcerated, including during a concerning incident while she was at [the department's] offices in January, 2023. At that time, she put J. G. on speakerphone to prove that she was at [the department's office] and not cheating on him. She also communicated with J. G. through written messaging available through tablets offered to incarcerated people by the Department of Correction. These messages generally express love, passion, and an intent by the respondent . . . to continue their relationship for a long time. As J. G.'s release date approached, she spoke about preparations for J. G.'s return to her home by, among other things, buying him clothes and sneakers, washing bed linens, and cooking his favorite meals. On May 20, 2024, two days before his release from prison, she told him, 'I'm your wife forever and I'm happy I'm your wife I'm so happy that [we're] married I love you baby' . . . . On May 22, 2024, the day of his release from prison, she stated, 'I can't wait to see you . . . I love you well [G]od bless on your way here [or] when are you coming [to get] here.' . . . There was also no testimony that divorce proceedings were initiated. The court, therefore, finds that the [respondent's] relationship with J. G. is ongoing and that he either is living in or will be returning to living in her house.

"The respondent . . . also testified that she has been sober for two years. However, this assertion is also belied by her messages to J. G. In these messages, she referenced the fact that she was drinking on several occasions within the last calendar year. On January 6, 2024, she said, 'I started drinking now just started' . . . On January 14, 2024, she said, 'yes I'll tell you I'm drinking . . .' and, on February 23, 2024, she said, 'I'm sorry that I bought a little bottle and drank that' . . . . The

court, therefore, finds that the respondent . . . has continued to drink alcohol despite her participation in several substance use programs. It also finds her testimony that she has been sober for two years not to be credible." (Citations omitted; footnote omitted.)

As to the respondent's rehabilitation, the court found: "[T]he respondent . . . has not cooperated completely with all the court-ordered specific steps, several of which are key in this case. She has not signed releases to allow [the department] to access records from [Community Partners in Action's Alternative in the Community program]; this hampers [the department's] and the court's ability to determine whether she has been abusing substances and whether she has made progress toward addressing her use of alcohol. She has also not partnered with [the department] to assess her husband; this is particularly concerning because he has a documented history of interpersonal violence, [the child] has been negatively affected by it, and it is clear that he will be an ongoing presence in the home.

"In addition, although she has completed several programs to address her alcoholism, her testimony that she has been sober for two years is not credible. In tablet messages, she discusses drinking on several occasions. Her representations, therefore, to her therapist and her programs and this court, appear to be designed to cover up the fact of a continuing problem rather than addressing it. Her consumption of alcohol led her to engage in dangerous conduct (driving while under the influence) that could have resulted in serious injury or death to her [child], who was in the backseat at the time. The fact that she is continuing to engage in drinking while covering it up to everyone except her husband leads to the conclusion that she has not modified her circumstances enough to give any assurance that [the child] would be safe in her care.

"Moreover, the [respondent's] testimony that she has ended her relationship with her husband, J. G., was not credible. Her tablet messages are filled with expressions of love and devotion and her intention that he will come back from incarceration to live with her. J. G. has a conviction history of intimate personal violence with other partners, was described by [the child] as hitting the respondent . . . and was incarcerated for seriously assaulting the respondent . . . with a motor vehicle. The [respondent's] service providers consistently expressed concern about her denial of intimate partner violence with J. G. and her lack of insight into that relationship and how she could keep [the child] safe."

On the basis of our review of the record, we conclude that the evidence was sufficient to support the court's determination that the respondent failed to achieve sufficient rehabilitation that would encourage the belief that, within a reasonable time, she could assume a responsible position in the child's life. See *In re Mikhail M.*, supra, 230 Conn. App. 91. The respondent's claim on appeal that the messages, to which the respondent did not object at trial, were undermined by testimonial evidence constitutes an improper request for this court to reweigh the evidence. "This we will not do, as it is not the function of a court of review to retry the facts." (Internal quotation marks omitted.) *In re Jacqueline K.*, 229 Conn. App. 710, 728, 328 A.3d 253 (2024).

### III

The respondent's final claim is that the court improperly determined that terminating her parental rights was in the child's best interest. We disagree.

We begin our analysis by setting forth the relevant legal principles and standard of review. "In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of

the parent to the best interest of the child. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the [child] only if the court's findings are clearly erroneous. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence." (Internal quotation marks omitted.) *In re Bianca K.*, 188 Conn. App. 259, 273, 203 A.3d 1280 (2019).

In the present case, in assessing the child's best interest, the court considered and made written findings as to each of the factors enumerated in § 17a-112 (k). The respondent makes only two brief arguments in support of her claim that the court improperly determined that termination of the respondent's parental rights was in the best interest of the child. First, she contends that the trial court's best interest determination was "based upon the same flawed weighing of the evidence" that supported the trial court's finding that the respondent had failed to rehabilitate. This contention is not persuasive because, as noted previously, we decline the respondent's invitation to reweigh the evidence. See *In re Aubrey K.*, 216 Conn. App. 632, 669, 285 A.3d 1153 (2022), cert. denied, 345 Conn. 972, 286 A.3d 907 (2023).

Second, the respondent argues that the court misstated the law in referring to the child's attorney as "charged with asserting [the child's] wishes and best interests . . . ." General Statutes § 46b-129a (2) (C) provides that "[t]he primary role of any counsel for the child shall be to advocate for the child in accordance with the Rules of Professional Conduct, except that if the child is incapable of expressing the child's wishes to the child's counsel because of age or other incapacity, the counsel for the child shall advocate for the best interests of the child." With respect to the assignment of a guardian ad litem, subdivision (2) (D) provides that, "[i]f the court, based on evidence before it, or counsel for the child, determines that the child cannot adequately act in his or her own best interests and the child's wishes, as determined by counsel, if followed, could lead to substantial physical, financial or other harm to the child unless protective action is taken, counsel may request and the court may order that a separate guardian ad litem be assigned for the child, in which case the court shall either appoint a guardian ad litem to serve on a voluntary basis or notify the office of Chief Public Defender who shall assign a separate guardian ad litem for the child." General Statutes § 46b-129a (2) (D).

In the present case, no party argued that the child's rights and best interest did not coincide, nor did any party make a motion for the appointment of a guardian ad litem. Finally, the respondent makes no claim that the court required the input of a guardian ad litem to determine the best interest of the child. Thus, we reject the respondent's contention that the court misstated the law, and we conclude that the court's determination that termination of the respondent's parental rights was in the child's best interest was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.